IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

TOMAS FLORES,                                    Case No. 1:12-cv-02156-CL

                    Plaintiff,

       v.

**REPORT &
RECOMMENDATION**

MURPHY COMPANY, an Oregon Business
Corporation, doing business as MURPHY
VENEER,

                Defendant.

---

CLARKE, Magistrate Judge

      Plaintiff brings claims against the defendant Murphy Company under the Americans with

Disabilities Act (ADA), the Family Medical Leave Act, (FMLA), O.R.S. 659A.112, and

659A.183, Oregon's Family Leave Act (OFLA). This matter comes before the court on the

defendant's motion for partial summary judgment (#10). For the reason below, defendant's

motion for summary should be DENIED.

## BACKGROUND

Plaintiff was employed full time by Murphy Veneer, beginning in or around July, 2003. On July 22, 2011 Plaintiff sought treatment for depression and anxiety. On August 1, 2011, the police detained Plaintiff at Murphy Veneer, and transported him to Rogue Valley Medical Center. He was admitted and placed on an overnight mental health hold; he was suicidal at the time. He saw a doctor to follow up on August 12, 2011. In September of 2011, Plaintiff filled out FMLA paperwork and was granted coverage for intermittent leave of absence in July and August, 2011, for a total of approximately eight days.

Paul D. Matz, M.D., filled out the FMLA paperwork for Plaintiff. In it, he noted that the condition commenced on July 22, 2011, and the patient was treated for the condition on that date, admitted to a hospital facility on August 1, and treated again on August 12. Dr. Matz checked the boxes to indicate that the patient will need to have treatment visits at least twice per year, and that medication was prescribed at the time of treatment. On the line indicating that the patient was referred to other health care providers for evaluation or treatment, the doctor wrote, "Counseling, RVMC Behavioral Health, Jackson County Mental Health." The doctor noted affirmatively that the employee "will need to attend follow-up treatment appointments" estimated at "2-4 hrs," "every 2 months." He also noted affirmatively that the condition "will cause episodic flare-ups periodically preventing the employee from performing his/her job functions," at an estimated frequency of "2 times per 2 months," with a duration of "24 hours or 4 days per episode."

On December 12, 2011 Plaintiff alleges that he contacted his manager Oly Arrant and told him that he was having another episode and would not be in to work. Plaintiff had previously been told to call in every time he was suffering from anxiety and depression episodes.

He alleges that the information he gave Mr. Arrant was the same as he gave every time he had

previously called in to request FMLA leave time. Plaintiff alleges that on the following day,

December 13, 2011 he contacted Mr. Arrant again and told him he would need a week or two of

leave time to resolve his issues.

On Wednesday, December 14, 2011, plaintiff claims that he found out the Sheriff's office

was looking for him, so he went to the office to find out why. He claims that on the way to the

Sheriff's office, he called to tell Mr. Arrant where he was going and that he would not be in that

day. He claims that when he spoke to Mr. Arrant on this occasion, he was not expecting to be

arrested when he arrived. He was arrested, however, and he claims that his arrest was related to

the anxiety and depression he was suffering at the time. He attempted to commit suicide while

incarcerated.

Plaintiff claims he contacted Mr. Arrant, his supervisor, on the day he was released from

jail, which was either December 19 or 20, 2011. He claims Mr. Arrant acknowledged that he

knew that he'd been in jail and that was the reason Plaintiff had been unable to contact him.

Plaintiff claims that he told Mr. Arrant that he would need more FMLA time, and Mr. Arrant

responded that he would need to get a doctor's note, and he would also have to talk to Mr.

Tollefson, the general manager, before he would be allowed to return to work. Plaintiff

attempted to contact Mr. Tollefson, but was told that he was unavailable, as his grandmother had

recently passed away.

On December 21, 2011, Plaintiff went to Medford Medical Clinic and got a note from

Keith Williamson, M.D. Plaintiff called Mr. Arrant that same day to tell him about the note, but

Mr. Arrant told him he was on indefinite suspension anyway. Approximately two days later, he

called again, and Mr. Arrant told him he had a meeting scheduled with Mr. Tollefson. On

approximately December 27, 2011, Plaintiff met with Mr. Arrant and Mr. Tollefson and gave

them the doctor's note from December 21, along with the notes from Jackson County Mental

Health dated December 12 and 13, 2011. Plaintiff claims that the supervisors refused to read the

notes, and that they told him that Mr. Arrant told Mr. Tollefson that Plaintiff did not call in after

being released from jail. Plaintiff was instead informed that he had been terminated.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine

dispute as to any material of fact and that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The

moving party has the initial burden of showing that no genuine issue of material fact exists.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076

(9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may

only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279

F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When a properly supported motion for summary judgment is made, the burden shifts to

the opposing party to set forth specific facts showing that there is a genuine issue for trial. Id. at

250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion

for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the

opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts

which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. In assessing whether

a party has met its burden, the court views the evidence in the light most favorable to the non-

moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).

## DISCUSSION

Plaintiff alleges unlawful employment practices on the basis of disability discrimination and retaliation, failure to provide reasonable accommodations, and medical leave discrimination and retaliation. His claims arise under the Americans with Disabilities Act (ADA), the Family Medical Leave Act, (FMLA), O.R.S. 659A.112, and 659A.183, Oregon's Family Leave Act (OFLA). Defendant moves for summary judgment as to the claims under the FMLA and the OFLA.

### I.    FMLA Claim

The Family Medical Leave Act of 1993 (FMLA) is a federal law that entitles an employee up to twelve workweeks of leave during any twelve-month period if the employee is unable to perform work related duties due to a serious health condition. 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a). Mental illness may be considered a serious health condition, but only if all conditions set forth in the regulations for a serious health condition are met. 29 C.F.R. § 825.113(d).

A serious health condition involving "continuing treatment by a health care provider" includes any one or more of the following:

    a.  Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
        1.  Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

      2.  Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

      3.  The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

      . . .

c.  Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

      1.  Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

      2.  Continues over an extended period of time (including recurring episodes of a single underlying condition); and

      3.  May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

      . . .

f.  Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level. An employee who is pregnant may be unable to report to work because of severe morning sickness.

29 C.F.R. § 825.115(a), (c), (f). "The term incapacity means inability to work, attend school or

perform other regular daily activities due to the serious health condition, treatment therefore, or

recovery therefrom." 29 C.F.R. § 825.113.

    "Health care provider" means:

(1) The Act defines health care provider as:
    (i) A doctor of medicine or osteopathy who is authorized to practice medicine or
    surgery (as appropriate) by the State in which the doctor practices; or
    (ii) Any other person determined by the Secretary to be capable of providing
    health care services.
(2) Others "capable of providing health care services" include only:

      (i) Podiatrists, dentists, clinical psychologists, optometrists, and chiropractors . . . authorized to practice in the State and performing within the scope of their practice as defined under State law;
      (ii) Nurse practitioners, nurse-midwives, clinical social workers and physician assistants who are authorized to practice under State law and who are performing within the scope of their practice as defined under State law;

29 C.F.R. § 825.102.

      "Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA–qualifying reason in the applicable 12–month period. . . . All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12–month period." 29 C.F.R. § 825.300(b)(1). Employers shall provide written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations. 29 C.F.R. § 825.300(c)(1).

      Whether FMLA leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown. 29 C.F.R. § 825.302(a). As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. 29 C.F.R. § 825.302(b).

      As far as the content of the notice, an employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave, and the anticipated timing and duration of the leave. 29 C.F.R. § 825.302(c). When an employee seeks leave due to a FMLA–qualifying reason, for which the employer has previously provided FMLA–protected leave, the employee must specifically reference the qualifying reason for leave or the need for FMLA leave. Id. In all cases, the employer should inquire further of the

employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. Id. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave. Id. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. Id.

An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. 29 C.F.R. § 825.302(d). Unusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full. Id.

The defendant claims that summary judgment is proper because (1) the Plaintiff did not qualify for FMLA leave, and (2) he did not provide proper notice to his employer under the Act. It is undisputed that the Plaintiff in this case was initially granted FMLA leave based on his anxiety and depression in July and August, 2011, and the FMLA paperwork indicated his condition would cause episodic flare-ups periodically preventing him from performing his job functions such that it would be medically necessary for him to be absent during the flare-ups. Therefore, the question is whether the Plaintiff has submitted sufficient evidence to raise a genuine issue of material fact as to whether or not his absence in December 2011 was FLMA-eligible for the same qualifying reason as his initial leave, and whether or not his employer got adequate notice of the leave.

### a. Same qualifying reason

Plaintiff was granted FMLA protection for his absences in July and August, 2011. This protection was granted based on treatment he sought for anxiety and depression, the fact that he was detained by law enforcement and placed on a mental health hold because he was suicidal, as well as treatment he received following the hold. Plaintiff has submitted evidence that his absence in December, 2011, was due to a similar episode of anxiety and depression that, like the previous summer, resulted in detainment by law enforcement and attempted suicide. While the defendant does not dispute that Plaintiff sought treatment for his condition at Jackson County Mental Health, defendant claims that those visits do not qualify as "treatment by a health care provider."

The Court agrees that the mental health counselors who treated the Plaintiff do not qualify as "health care providers" under the FMLA. See 29 C.F.R. § 825.102. However, such a qualification is unnecessary because, as discussed above, "all FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12–month period." 29 C.F.R. § 825.300(b)(1). In this case, Dr. Matz, the physician who filled out Plaintiff's FMLA paperwork, noted specifically that the Plaintiff should seek counseling and treatment at Jackson County Mental Health.

Additionally, defendant does not dispute the fact that Plaintiff did seek treatment by a qualifying "health care provider" on December 21; defendant merely claims that such treatment is insufficient for FMLA eligibility because it was not "within seven days of the first day of incapacity" as required by 29 C.F.R. § 825.115(a)(3). However, this again ignores the fact that Plaintiff was already found eligible for FMLA leave, and thus did not have to be found separately eligible as long as the absence was for the same qualifying reason. Moreover, the

FMLA paperwork specifically anticipated that the Plaintiff's underlying condition would cause "episodic flare-ups" of incapacity. Episodic flare-ups are dealt with, not in § 825.115(a), but in §825.115(c), which defines eligibility for a serious chronic health condition. As discussed above, absences attributable to a serious chronic health condition qualify for FMLA leave even though the employee does not receive treatment from a health care provider during the absence. See 29 C.F.R. § 825.115(f).

Plaintiff has submitted sufficient evidence to raise an issue of material fact as to whether or not his absence in December 2011 was for the same qualifying reason as his FMLA protected leave in July and August, 2011.

### b. Notice

Defendant claims that even if Plaintiff's condition and treatment qualified him for FMLA leave, he did not provide sufficient notice to his employer to take such leave. Relying only on Plaintiff's deposition testimony, defendant claims that notice was insufficient because, while Plaintiff did call his supervisor on December 12 and 13, his supervisor told him to call in every day to let him know if he was not coming to work. He did not comply with these orders because he was incarcerated and, even though he had access to a telephone, he did not call during his incarceration. Next, accepting the deposition testimony as true for these purposes, defendant argues that even though Plaintiff gave a letter from a mental health counselor to his nephew to deliver to his employer, and asked a person in jail to have their friend or girlfriend contact his employer, these were not "responsible parties" who could give notice for him. Defendant also claims that the declaration submitted by the Plaintiff contradicts his deposition testimony and should be thus disregarded. The Court disagrees.

According to his declaration, Plaintiff called his supervisor on December 12 and 13 and specifically stated that he was suffering anxiety and depression and would need FMLA time. While Plaintiff's deposition testimony does not appear to state this directly, it also does not contradict it, and the defendant has not submitted evidence to the contrary.

Plaintiff's declaration asserts that he was unable to call his supervisor while incarcerated because, in order to use the telephone at the jail, there had to be an account set up on the other end to accept the call, and he had no place to make such a call. Defendant submits no evidence to contradict this testimony. Even though defendant can require compliance with its usual and customary procedural requirements for requesting leave, Plaintiff has submitted sufficient evidence to show that he was subject to "unusual circumstances" while incarcerated that he was prevented from such compliance. See 29 C.F.R. § 825.302(d).

Defendant questions whether Plaintiff submitted his letter from Jackson County Mental Health through a "responsible party," but defendant does not dispute that it was received. Finally, while the letter may not have been from a qualifying "medical provider," it certainly provided notice that the Plaintiff was suffering from his protected underlying condition and was attempting to seek leave under the FMLA. Defendant of course had the right under the FMLA to inquire further and request medical certification for the need for leave, but according to both the Plaintiff's deposition testimony and his declaration, he attempted to submit a letter from a qualified medical provider when he met with Arrant and Tollefson on December 27. His supervisors disregarded it and informed him that he was terminated.

Similarly, there is a factual dispute between the parties as to whether or not Plaintiff called or communicated with his supervisors after he was released from jail. Defendant relies on Plaintiff's deposition testimony to assert that "Plaintiff did not contact his employer when he was

released from jail. He testified that his supervisor and others from Murphy Company called him

and asked him to call back, but that he did not return their call." However, the deposition

transcript does not support this assertion.

> Q: Okay. Tell me about all the conversations you had with Oly and
> Kevin Tollefson after you got out of jail.
> A: They were pretty much – somebody's grandma died. I don't
> remember whose. It was the supervisor's. . . . The conversations I
> had with Oly and Kevin after I got out of jail? There was no
> conversation. They called – they called and kept on telling me to
> call back. Oly did.
> Q: Did you eventually have a meeting with Kevin and Oly after
> you got out of jail?
> A: Weeks later.
> Q: What do you remember was said in that meeting by Oly or
> Kevin?
> A: They said that Oly had told Kevin that I had not called.
> Q: Okay. What else was said?
> A: That's all I remember, because I was blown away that – what he
> had said to Kevn. I don't – I was angry and upset.
> Q: So that's the only thing you remember being said in that
> meeting?
> A: That really stuck with me, yes, that he lied and said that I didn't
> call.

Plf. Depo. Tr. 69-70. Plaintiff's declaration does not contradict this testimony, but explains that,

when he did call and talk to Oly Arrant, he was told that he needed to talk to Kevin Tollefson,

who was unavailable because his grandmother had passed away. In other words, he was told to

keep calling back. Thus, he did not "have a conversation" about his FMLA leave, with either

supervisor, until he met with both of them on December 27. Plaintiff's deposition testimony

makes more sense in this context. It does not make sense that Plaintiff, while giving his

deposition testimony, would have known about someone's grandmother passing away and that

he would be angry that "he lied and said I didn't call," if he was simultaneously admitting that he

never called.

At the very least, the Plaintiff has submitted sufficient evidence of his FMLA eligibility and notice to his employer of his need for FMLA leave that there is a genuine issue of material fact that should be submitted to a jury. Defendant's motion for summary judgment as to this claim should be denied.

## II.    OFLA claim

Under the Oregon Family Leave Act (OFLA), employers with 25 or more workers must provide eligible employees 12 weeks – 480 hours – of unpaid leave a year in the event that a "serious health condition of the employee . . . renders the employee unable to perform at least one of the essential functions of the employee's regular position." Centennial Sch. Dist. No. 28J v. Oregon Bureau of Labor & Indus., 169 Or. App. 489, 498, 10 P.3d 945, 949 (2000). The employer may require medical verification from a health care provider of the need for the leave, and may require an employee to obtain the opinion of a second health care provider designated by the employer, at the employer's expense. O.R.S. § 659.482. The OFLA also provides for "intermittent" leave, which allows an employee to take leave intermittently when it is medically necessary, thus, potentially extending the period of leave beyond 12 weeks when leave taken is less than full-time. O.R.S. § 659.478(6). ORS 659.492(1) provides that a covered employer who denies OFLA leave to an eligible employee commits an unlawful employment practice.

The federal counterpart to the OFLA is the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 et seq, discussed above. Given the similarities between the two acts and the potential that leave may be covered under both the federal and state acts, the Oregon Legislature expressly provided that the OFLA provisions "shall be construed to the extent possible in a manner that is consistent with any similar provisions of the [FMLA]." O.R.S. § 659.494(2); Centennial Sch. Dist. No. 28J, 169 Or. App. at 499, 10 P.3d at 950.

As relevant here, an OFLA-qualifying "serious health condition" means:

> (a) An illness, injury, impairment or physical or mental condition that requires inpatient care in a hospital, hospice or residential medical care facility;
> (b) An illness, disease or condition that in the medical judgment of the treating health care provider poses an imminent danger of death, is terminal in prognosis with a reasonable possibility of death in the near future, or *requires constant care*.

O.R.S. § 659A.150(6)(a)-(b) (emphasis added). The Oregon Court of Appeals has held that the definition of a serious health condition requiring "constant care" is similar to the FMLA's definition of a serious health condition requiring "continuing treatment." <u>Centennial Sch. Dist. No. 28J</u>, 169 Or. App. at 502, 10 P.3d at 952.

As discussed in the previous section, the Plaintiff has raised a genuine issue of material fact as to whether his absence was covered by the FMLA's definition of a serious health condition requiring continuing treatment. Therefore, by extension, he has raised the same genuine issue of material fact as to whether his absence was covered by the OFLA's definition of a serious health condition requiring constant care. Defendant's motion should be denied.

## RECOMMENDATION

Defendant's motion (#10) should be DENIED.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. See FED. R. CIV. P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

//

DATED this ___2/___ day of January, 2014.

_____

MARK D. CLARKE
United States Magistrate Judge